## City of Versailles v. Kentucky Highland Railroad Company.

(Decided March 21, 1913.)

Appeal from Woodford Circuit Court.

1. Municipal Corporations—Policy of Courts With Reference to.— Courts are reluctant to declare a municipal ordinance, relating to a subject upon which the municipal council may legislate, invalid on the ground that it is unreasonable, arbitrary or oppressive; but they will do so, if it is patent that such will be the effect of putting the ordinance into operation.

2. Municipal Corporations—Railroad Crossing—Manner of Constructing.—While a municipal council may, by ordinance, exercise a reasonable control over the manner in which a railroad company constructs or operates its railroad upon or in crossing its streets, it cannot control the manner of its constructing its road on its own ground, although situated within the corporate limits of the city.

3. Municipal Corporations—Ordinances—Police Power—Railroads— Railings on Sides of Cuts.—A municipal council may, under the police power, by ordinance require a railroad company to place railings, on the sides of its cuts, within the municipality, contiguous to streets or open ways, if deemed reasonably necessary for the safety of its inhabitants or their stock. But to require it, by ordinance, to wall or arch such cuts where situated wholly on its own ground, is an unreasonable and oppressive exercise of the police power and an unwarranted interference with and control of the railroad company's business; and in such a case enforcement of the provisions of the ordinance may be restrained by injunction.

HARRY A. SCHOBERTH, SAMUEL M. WILSON for appellant.

WALLACE & HARRISS, BENJAMIN D. WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted by appellee and an injunction obtained by it to prevent the enforcement by appel-

lant of an alleged void ordinance, passed by its board of council, and to prevent prosecutions threatened against appellee for failing to comply with its provisions. The ordinance in question reads as follows:

"Be It Ordained, By the Board of Council of the City of Versailles,

"Section 1. That any and all persons, companies or corporations owning, possessing, operating or having charge or control of a railroad passing into or through any portion of the city of Versailles or engaged in locating, constructing or operating any proposed line of railroad, or any part thereof, within or through the corporate limits of said city, shall be and they are hereby required to cover any cuts or excavations through which such railroad, or some part of it, may pass inside said corporate limits with a solid, substantial arch of stone, concrete or other durable material of sufficient thickness and strength to furnish a safe and secure covering and to prevent the emission of smoke, soot, cinders, sparks, and noxious vapors through such covering; provided, that the aforesaid requirements shall not apply to any excavation or cut through which any railroad may pass inside the corporate limits of said city, unless such cut or excavation shall be twenty feet or more in depth, measuring from the level of the natural surface of the adjacent ground to the top of the rails, when laid at the established grade of such railroad; and, further, unless such cut or excavation shall be located within five hundred feet of any dwelling, church, store, warehouse, public building or other similar structure.

"Section 2. Be it further ordained that at the approaches to any such arch or covering as is mentioned in section 1 of this ordinance, and for a reasonable distance, not exceeding one hundred feet from the face of such arch or covering, the side of any such open cut, wherever ten feet or more in height, shall be securely walled with substantial masonry for a height of at least three feet from the grade of the track of any such railroad.

"Section 3. Be it further ordained, that any open cut or excavations through which any railroad now existing or hereafter constructed within the corporate limits of the city of Versailles may pass, if such cuts exceed five feet in depth shall be securely inclosed with fencing, barriers or other suitable safeguards at least five feet in

height, erected at the top of the sides of any such railroad cut or excavation.

"Section 4. Be it further ordained that any person, company or corporation owning, possessing, controlling, projecting, constructing or operating a railroad or a proposed railroad into or through any portion of the city of Versailles or engaged in any work connected therewith, who shall violate any of the provisions of the foregoing sections of this ordinance or any of them shall, for each offense, be fined not less than twenty-five dollars nor more than one hundred dollars, and each day during which any requirement hereof is not obeyed or provision hereof is not complied with shall be deemed and shall constitute a separate offense."

Appellee filed a demurrer to the petition, which the circuit court overruled. Appellant elected to stand upon the demurrer and the court thereupon entered judgment in conformity to the prayer of the petition. From that judgment this appeal is prosecuted. The circuit court seemed to be of the opinion that appellant's city council, were without power to pass the ordinance and that same is unreasonable, discriminatory and oppressive, and therefore unconstitutional.

Appellant is a city of the fourth class and to ascertain the powers of its council we must look to the provisions of the Kentucky Statutes applicable to cities of its class.

Subsection 6, section 3490, confers upon the board of council power to make all regulations necessary to secure the general health of the inhabitants of the city. Subsection 7 gives it the power to prevent and remove nuisances, and define and declare, by ordinance, what shall be a nuisance within the limits of the city.

Subsection 25 provides:

"The board of council may grant the right of way over the public streets or public grounds of the city to any railroad company or street railroad company, on such conditions as to them may seem proper, and shall have a supervising control over the use of same, and shall regulate the speed of cars and signals and fare on street cars; and under like condition and supervision may grant the right of way that may be necessary to gas companies, water companies, electric light companies, telephone companies, or any like companies; and may compel any railroad company to erect and maintain gates at any or all street crossings, and to prevent railways from

blocking or obstructing the streets or public ways of the city, and to fix penalties for the violation of these provisions; provided, That nothing herein shall be construed to prevent any property-owner, whose property may abut on a street on which a railway may be granted a right of way from recovering from such railway any damage that may be done to said property by the occupation or use of said street by such railroad.''

Subsection 33 provides:

''Said city council shall have legislative power to make by-laws and ordinances for the carrying into effect of all the powers herein granted for the government of the city, and to do all things properly belonging to the police powers of incorporated cities. * * *''

It is manifest from the language of the ordinance under consideration, that the council in passing it did not have in view the protection of the health of the inhabitants of the city, or any purpose of declaring to be a nuisance such railroad cuts, as are mentioned therein; nor are their provisions applicable to a railroad occupying a street or public ground of the city. Yet, if the ordinance has any legal force whatever, it must be because it was passed by the city council in the exercise of its police power as contemplated by subsection 33 of section 3490, supra.

We may concede that the subject with which the ordinance deals, i. e., regulation of the operation of railroads in the corporate limits of the city, is within the police power and therefore one with respect to which its council may legislate. But, the question remains, does the ordinance, as expressed, manifest a reasonable exercsie of the police power?

It may be remarked that courts are reluctant to declare a municipal ordinance relating to a subject upon which the municipal council has statutory authority to legislate, invalid on the ground that it is unreasonable, arbitrary or oppressive. (Silva v. City of Newport, 150 Ky., 781; South Cov. Ry. Co. v. Berry, 93 Ky., 43; C. & O. Ry. Co. v. City of Maysville, 24 R., 614; L. & N. R. R. Co. v. City of Louisville, 141 Ky., 131; State v. Clark, 54 Mo., 17; Crowley v. Christensen, 137 U. S., 86; Ex-parte Hays, 20 L. R. A., 701; Commonwealth v. Reineke C. M. Co., 117 Ky., 885; L. & N. R. R. Co. v. Kentucky, 161 U. S., 667.) But they will do so, if it is patent that

such will be the effect of putting the ordinance into opera- tion.

The following excerpt from the opinion in Town of LaGrange v. Overstreet, 141 Ky., 43, will illustrate our meaning:

"It will be observed that the statute vests large pow- ers in the board of trustees, giving them wide discretion in the enactment of ordinances controlling and regulating the affairs of the town as well as the condition and im- provement of its sidewalks, streets and highways. But, extensive as their authority is, there is the limitation and restraint upon its exercise imposed by well established principles of law, that it must not be used in an unreason- able, arbitrary, capricious or oppressive manner, or to gratify malice or ill will. If it is, the court will protect the citizen or class of citizens affected by this unauthor- ized assumption of power, and prevent by its process the municipal boards from acting without the scope of their authority, or within the scope, but in violation of the principle noted."

In Boyd, &c., v. Board of Council of City of Frank- fort, 117 Ky., 199, we held that a city council could not by ordinance declare a thing to be a public nuisance which is not, in fact, a nuisance, and that such an ordinance, being an attempted exercise of arbitrary power on the part of the council, was invalid and unenforceable.

It will be observed that this ordinance is not intended to affect the manner of the construction of appellee's railroad where it runs along or crosses the public streets of the municipality, or upon public ground belonging to the municipality, as provided by subsection 25, section 3490, Kentucky Statutes, but is aimed at control of the manner of the construction of appellee's railroad on its own property, a thing which neither the constitution nor any statute of the States gives it authority to do.

Although such parts of appellee's railroad as are affected by the ordinance are situated upon its own ground or properly acquired right of way, as such right of way is within the corporate limits of the city, we think the city council would have the power to pass an ordi- nance requiring it to construct railings at the sides of its cuts, contiguous to streets or open ways of the city, if deemed reasonably necessary for the safety of its in- habitants, or stock owned by them. But the arbitrary control, which appellant's city council is attempting, by

the ordinance in question, to assert over appellee's rail- road is, we think, an unreasonable interference with and regulation of its business. The arching and walling of appellee's road bed, demanded by the ordinance, is, from any point of view, an unwarranted exercise of the police power and its requirement as to railing is without regard to whether the parts of the road to be affected lie contiguous to a street, alley or open way, and without a showing as to any necessity for the work required; and it is alleged in the petition, and admitted by the demurrer, that compliance with the provisions of the ordinance would cost appellee $47,000.00. We are unable to see that the enforcement of this ordinance would, in any way, conserve the public health, public morals or public safety. On the other hand, we can readily see how compliance therewith on the part of appellee would entail upon it enormous expense and unreasonably embarrass its business.

Our attention has been called to no city in this State of appellant's size or larger growth that requires of a railroad within its corporate limits the arching or fencing of its cuts or tracks.

As, in our opinion, the ordinance is unreasonable, arbitrary and oppressive in its provisions, we cannot declare it a valid exercise of the police power. Judgment affirmed.

Whole court sitting.